UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES THORNBERRY, et al.,

    Plaintiffs,

v.

    Case Number: 08-13492

GRAND TRUNK WESTERN RAILROAD INC.,

    HON. MARIANNE O. BATTANI

    Defendant/Cross-Claimant,

and

ARMOND CASSIL RAILROAD CONSTRUCTION, INC.,

    Defendant/Cross-Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT ARMOND CASSIL'S MOTION TO DISMISS CROSS-COMPLAINT**

Before the Court is Defendant Armond Cassil's Motion to Dismiss Cross-Complaint (Doc. 47). On December 2, 2010, the Court heard oral argument on this motion. For the reasons that follow, the motion is **GRANTED**.

**I.    BACKGROUND**

Plaintiff James Thornberry began the instant FELA action by filing suit against his former employer Defendant Grand Trunk Western Railroad Incorporated ("Grand Trunk"). (Doc. 2). Thornberry alleges that he was severely injured on December 14, 2007 after attempting to throw an allegedly defective switch while working at the General Motors ("GM") automotive yard in Pontiac, Michigan. He amended his Complaint to correct the corporate identities of the defendant parties. (Doc. 4). After learning that GM solely owned

and controlled the property on which the alleged injury occurred, Thornberry filed a Second Amended Complaint adding GM as a defendant (Doc. 7).

Discovery revealed that Grand Trunk and GM entered into an industry track agreement in which GM agreed to maintain the yard. GM inspected its yard, including the tracks and switches, on a monthly basis and performed maintenance and repairs as needed. (Doc. 45 at 23). Additionally, Grand Trunk and GM performed annual "industrial audits" in which representatives from both companies jointly inspected the track and switches to ensure they were functioning safely and properly. (Doc. 43 at 53; Doc. 45 at 24-25).

GM routinely hired Armond Cassil Railroad Construction Incorporated ("Armond Cassil") to satisfy its maintenance obligations under the track agreement. For instance, if any track or switches needed repairs beyond which GM could perform, Armond Cassil would do such work. (Doc. 44 at 31-32; Doc. 45 at 7). Relatedly, GM shared the results of the "industrial audits" with Armond Cassil so it could make any repairs that GM could not. (Doc. 44 at 30-31). GM also hired Armond Cassil twice a year to perform a major overhaul of its tracks and switches during the July and Christmas shutdown periods. (Doc. 45 at 19). Though Armond Cassil knew that Grand Trunk employees exclusively used the GM track, there was no express contract between Grand Trunk and Armond Cassil. (Doc. 43 at 12; Doc. 44 at 28-29, 48-49).

Armond Cassil's potential involvement with the switch at issue prompted the filing of the Third Amended Complaint in which Thornberry added Armond Cassil as a defendant.

(Doc. 27).[1] Grand Trunk then filed a crossclaim against Armond Cassil arguing that, in the event a jury find Grand Trunk liable for Thornberry's injuries, it is entitled to seek indemnity or contribution under the common law, and/or as a third party beneficiary to any contract in which GM hired Armond Cassil to maintain or repair the switch. (Doc. 35).

As discovery continued, it became apparent to Thornberry that there was not enough evidence to pinpoint Armond Cassil's involvement with the switch that allegedly injured him. Accordingly, Thornberry stipulated to the dismissal of Armond Cassil. (Doc. 38). The stipulation was not incorporated into an Order, nor was it signed by Grand Trunk.

Armond Cassil filed a motion to dismiss Grand Trunk's crossclaim under Rule 12(b)(6) and/or Rule 56. (Doc. 47). The Court heard oral argument on this motion on December 2, 2010. Armond Cassil's motion is now before the Court.

## II.   STANDARD OF REVIEW

### A.   Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a district court to dismiss a complaint that fails "to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). "This rule allows a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if every allegation in the complaint is true." Tidik v. Ritsema, 938 F.Supp. 416, 421 (E.D. Mich. 1996). Thus, when faced with a Rule 12(b)(6) motion to dismiss, a district court "must construe the complaint in the light most favorable to the plaintiff, [and] accept all factual allegations as true[.]" Allard v. Weitzman, 991 F.2d 1236, 1240 (6th Cir. 1993). To defeat a motion to dismiss, "a complaint must contain either direct or inferential

---

[1] Prior to Thornberry's filing of the third amendment complaint, the Court administratively closed GM as a party to this action in light of its bankruptcy. (Doc. 25).

allegations respecting all the material elements to sustain a recovery under some viable legal theory." Id. (quotation omitted).

### B. Rule 56

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, (1986). Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The Court "must lend credence" to the non-moving party's interpretation of the disputed facts. Marvin v. City of Taylor, 509 F.3d 234, 238 (6th Cir. 2007) (citing Scott v. Harris, 127 S.Ct. 1769, 1775 (2007)). The non-moving party may not rest upon its mere allegations, but rather must set out specific facts showing a genuine issue for trial. See, Fed. R. Civ. P. 56(c)(1). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could

4

reasonably find for the non-moving party. Hopson v.DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

## III. ANALYSIS

### A. Common Law Indemnification and Contribution

Count I of Grand Trunk's crossclaim asserts a claim of common law indemnity or contribution against Armond Cassil. (Doc. 35 at ¶ 3). Grand Trunk argues that it should be allowed to seek recovery from Armond Cassil in the event a jury finds Grand Trunk vicariously liable for Armond Cassil's actions. State law controls whether a FELA defendant may seek contribution or indemnity from a third party. Norfolk & Western Ry. Co. v. Ayers, 538 U.S. 135, 162 (2003) ("FELA defendants may bring indemnification and contribution actions against third parties under otherwise applicable state or federal law." (citing, *inter alia*, Mills v. River Term. R. Co., 276 F.3d 222, 224 (6th Cir. 2002); Walter v. Dow Chemical Co., 195 N.W.2d 323, 324-325 (Mich. App. 1972))).

As explained by the Michigan Supreme Court, "indemnification is an equitable doctrine that shifts the entire burden of judgment from one tortfeasor who has been compelled to pay it, to another whose active negligence is the primary cause of the harm. On the other hand, contribution is the partial payment made by each or any of jointly or severally liable tortfeasors who share a common liability to an injured party." St. Luke's Hosp. v. Giertz, 581 N.W.2d 665, 668 (Mich. 1998) (citations omitted). "In Michigan, the general rule for common-law indemnification is that a tortfeasor who was actively at fault cannot recover indemnification from a joint tortfeasor." Markley v. Oak Health Care Investors of Coldwater, Inc., 637 N.W.2d 219 (Mich. 2002) (citing Langley v. Harris Corp., 321 N.W.2d 662, 665 (Mich. 1982)). If the "indemnitee has become liable on purely technical or vicarious grounds, his constructive 'fault' should not bar his right of indemnity

5

against one who has saddled him with liability through genuinely tortious conduct." Langley, 321 N.W.2d at 667 (citations omitted). "The general rule of contribution is that one who is compelled to pay or satisfy the whole or to bear more than his aliquot share of the common burden or obligation, upon which several persons are equally liable or which they are bound to discharge, is entitled to contribution against the others to obtain from them payment of their respective shares." Tkachik v. Mandeville, 790 N.W.2d 260, 266 (Mich. 2010).

Explicit in the above discussion is the principle that the indemnitor or contributor must be liable to the injured party under the applicable substantive law. See, North Community Healthcare, Inc. v. Telford, 556 N.W.2d 180, 182 (Mich. App. 1996). Here, though Thornberry's claims against Grand Trunk arise under FELA, Grand Trunk's crossclaim against Armond Cassil does not, rather, it is governed by Michigan law. Consequently, for the purposes of the crossclaim, the alleged negligence by Armond Cassil with respect to Thornberry must be determined under Michigan tort law, whereas Grand Trunk's alleged negligence must be determined as a matter of FELA law. See, Cazad v. Chesapeake & Ohio Railway Company, 622 F.2d 72,75 (4th Cir. 1980); see also, Ellison v. Shell Oil Co., 882 F.2d 349, 352 (9th Cir. 1989) (analyzing state law to determine whether third-party agent of railroad owed injured railroad employee any tort duty for indemnification purposes); Armstrong v. The Kansas City Southern Ry. Co., 752 F.2d 1110 (5th Cir. 1985) (affirming a verdict in favor of an employee who had sued railroad employer for negligence under FELA, while absolving the third-party defendant of any responsibility to indemnify the railroad based on state law, even though the third-party defendant was deemed to be an agent of the railroad). Therefore, in order for Grand Trunk to seek indemnification or contribution from Armond Cassil, the Court must decide whether

6

Thornberry could hold Armond Cassil liable under Michigan tort law. After review of <u>Fultz v. Union-Commerce Assocs.</u>, 683 N.W.2d 587 (Mich. 2004) and its progeny, the Court concludes he could not.

In <u>Fultz</u>, the Michigan Supreme Court held that a third party could not sue a party to a contract for its negligent performance of that contract unless the plaintiff alleges that the defendant "owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations." <u>Id</u>. at 592. Lower courts were expressly instructed to:

> analyze tort actions based on a contract and brought by a plaintiff who is not a party to that contract by using a "separate and distinct" mode of analysis. Specifically, the threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations. If no independent duty exists, no tort action based on a contract will lie.

<u>Id</u>. The Court further explained that a party "breaches a duty that is 'separate and distinct' from the contract when it creates a 'new hazard' that it should have anticipated would pose a dangerous condition to third persons." The Sixth Circuit recently observed that "Michigan and federal district courts sitting in diversity have concluded that there is no independent duty under <u>Fultz</u> when a plaintiff alleges a hazard that is the subject of the defendant's contractual obligations." <u>Bennett v. MIS Corp.</u>, 607 F.3d 1076, 1094 (6th Cir. 2010) (collecting cases); <u>see also</u>, <u>Hatcher v. Senior Home Health Care Inc.</u>, 2010 WL 3296088, *5 (Mich. App. August 19, 2010) ("Our Supreme Court's broad application [of <u>Fultz</u>] demonstrates that where an injury is caused by a hazard that is even remotely connected to a contractual relationship, Michigan law bars any cause of action.").

Grand Trunk's ability to seek indemnity or contribution turns on whether it can show that Armond Cassil was negligent toward Thornberry under Michigan tort law. Stated conversely, Grand Trunk must show that Thornberry could hold Armond Cassil liable for

7

negligence.  The threshold element of such an action is duty.  Grand Trunk attempts to establish duty by arguing that Armond Cassil negligently performed a contract to repair or maintain the switch that allegedly injured Thornberry.  Even assuming as much, Grand Trunk has not shown how Armond Cassil owed Thornberry a duty "separate and distinct" from the subject matter of that contract nor shown how Armond Cassil's actions created a "new hazard."

On this point, Grand Trunk argues that Armond Cassil created a "new hazard" by failing to properly inspect, maintain, and/or discover defects in the switch.  In other words, Grand Trunk claims Armond Cassil failed to fulfill its contractual duties owed to GM.  Fultz clearly bars such a claim.  Hatcher, at *5 ("plaintiffs cannot establish that defendant's conduct created a new hazard where defendant's conduct was consistent with its contractual obligations").  Moreover, there is no allegation and no evidence to suggest that Armond Cassil broke or further damaged the switch, which might support a finding of a "new hazard."  See, Boylan v. Fifty-Eight Limited Liability Co., --- N.W.2d ----, 2010 WL 3488995 (Mich. App. September 07, 2010) (discussing what constitutes a "separate and distinct" duty and "new hazard" under Fultz).  Since Thornberry cannot establish duty and hold Armond Cassil liable for his injuries, Grand Trunk is not entitled to seek common law indemnity or contribution from Armond Cassil.  Accordingly, Count I of Grand Trunk's crossclaim is dismissed as a matter of law pursuant to Rule 12(b)(6).

### B.     Breach of Contract

Grand Trunk brings a breach of contract claim against Armond Cassil in Count II of its crossclaim.  (Doc. 35 at ¶ 6).  Grand Trunk argues that it and Thornberry were third-party beneficiaries of any contract between Armond Cassil and GM and that Armond Cassil breached the contract resulting in Thornberry's injuries.

8

In Michigan, only intended third-party beneficiaries may sue when a contractual promise in their favor has been breached. M.C.L. § 600.1405; Kisiel v. Holz, 725 N.W.2d 67, 69 (Mich. App. 2006) (citing Schmalfeldt v. North Pointe Ins. Co., 670 N.W.2d 651, 654 (Mich. 2003). An incidental beneficiary has no rights under a contract. Koenig v. City of South Haven, 597 N.W.2d 99, 105 (Mich. 1999) ("[O]nly intended third-party beneficiaries, not incidental beneficiaries, may enforce a contract under § 1405.); Kammer Asphalt Paving Co., Inc. v. East China Twp. Schools, 504 N.W.2d 635, 642 (Mich. 1993). A third party cannot maintain a breach of contract action simply because he or she would receive a benefit from its performance or would be injured by its breach. Id. "Third-party beneficiary status requires an express promise to act to the benefit of the third party; where no such promise exists, that third party cannot maintain an action for breach of the contract." Kisiel, 725 N.W.2d at 69 (citing Dynamic Constr. Co. v. Barton Malow Co., 543 N.W.2d 31, 33 (Mich. 1995). "[A] third-party beneficiary may be one of a class of persons, if the class is sufficiently described or designated." Koenig, 597 N.W.2d at 105-106 (quotations omitted). Furthermore, "a determination that a contract establishes an intended third-party beneficiary through a direct promise to the third party must be based on an objective review of the form and meaning of the contract itself." Kisiel, 725 N.W.2d at 69 (citing Schmalfeldt, 670 N.W.2d at 654).

Grand Trunk has two main arguments why it and Thornberry are intended third-party beneficiaries: (1) Armond Cassil knew Grand Trunk employees exclusively used the GM tracks and (2) Armond Cassil reviewed the results of the "industrial audits" so it could make appropriate repairs. Though Armond Cassil was aware that its repair work would benefit Grand Trunk and its employees, it does not necessarily follow that Armond Cassil promised to act for Grand Trunk's benefit.

9

There was no written contract between Armond Cassil and GM. Discovery has shown that GM would "spot buy" Armond Cassil's services on an as-needed basis; there was no overarching services or maintenance contract between those companies. (Doc. 45 at 7; Doc. 52 Ex. C, D, E, F). None of the documents Grand Trunk introduced show that Armond Cassil expressly promised to act for Grand Trunk's benefit. Moreover, Grand Trunk has not offered any evidence or testimony that describes an oral agreement in which Armond Cassil declared Grand Trunk an intended third-party beneficiary. Armond Cassil explains it was hired to help GM fulfill its maintenance obligations under the track agreement and never had direct contact with Grand Trunk. (Doc. 44 at 28-31). While it is clear that Grand Trunk was an incidental beneficiary, there is not sufficient objective evidence to support a finding that Armond Cassil promised to repair GM's track directly for Grand Trunk's benefit. See, Shay v. Aldrich, 790 N.W.2d 629, 639 n.47 (Mich. 2010) ("[A]n objective standard is to be used to determine from the contract itself whether the promisor undertook to give or to do or to refrain from doing something directly to or for the putative third-party beneficiary." (quotations omitted)). Since Grand Trunk cannot establish that it was an intended third-party beneficiary, it cannot maintain a breach of contract claim against Armond Cassil. Therefore, Armond Cassil is entitled to summary judgment on Count II of Grand Trunk's crossclaim.

**IV.   CONCLUSION**

For the reasons stated above, the Court **GRANTS** Defendant Armond Cassil's Motion to Dismiss Cross-Complaint (Doc. 47). Grand Trunk's crossclaim is dismissed it its entirety.

**IT IS SO ORDERED.**

                                              s/Marianne O. Battani
                                              MARIANNE O. BATTANI
                                              UNITED STATES DISTRICT JUDGE

Dated: March 2, 2011

**CERTIFICATE OF SERVICE**

     Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

                                              s/Bernadette M. Thebolt
                                              Case Manager